IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

ARLICE J. BLENDHEIM PAAP,

                Plaintiff,

    v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                Defendant.

No. 3:10-CV-6303-HZ

OPINION & ORDER

John E. Haapala , Jr.
401 E. 10th Avenue, Suite 240
Eugene, OR 97401

        Attorney for Plaintiff

Adrian L. Brown
U.S. ATTORNEY'S OFFICE
District of Oregon
1000 S.W. Third Ave., Suite 600
Portland, OR 97204

/ / /

1 - OPINION & ORDER

Jordan D. Goddard
SOCIAL SERCURITY ADMINISTRATION
Office of the General Counsel
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, WA 98104-7075

      Attorneys for Defendant

HERNANDEZ, District Judge:

      Plaintiff, Arlice J. Blendheim Paap ("Plaintiff"), brings this action pursuant to the Social Security Act (the "Act"), 42 U.S.C. § 405(g), to obtain judicial review of the final decision of the Commissioner of Social Security (the "Commissioner"). The Commissioner found Plaintiff not disabled and denied her applications for Title II Disability Insurance Benefits ("DIB") and Title XVI Supplemental Security Income ("SSI"). For the reasons set forth below, the Commissioner's decision is REVERSED and REMANDED for additional proceedings.

## PROCEDURAL BACKGROUND

      On January 18, 2007, Plaintiff filed for DIB and SSI alleging a disability onset date of July 31, 2006, based on "back injury, diabetes, [and] knee injury." R. at 149. Plaintiff's applications were denied on March 23, 2007, and on reconsideration on July 3, 2007. R. at 10. Plaintiff subsequently requested a hearing before an administrative law judge ("ALJ") of the Social Security Administration ("SSA"). R. at 10. A hearing was held on August 5, 2009, before ALJ Philip P. Mcleod. R. at 21. On September 25, 2009, the ALJ found Plaintiff not disabled. Id. Plaintiff requested a review of the ALJ's decision, but the Appeals Council denied Plaintiff's request on August 31, 2010, making it the final decision of the Commissioner. See 20 C.F.R. §§ 404.981, 422.210. This appeal followed.

/ / /

## FACTUAL BACKGROUND

The parties are familiar with the medical evidence and other evidence of the record. Therefore, the evidence will not be repeated here except as necessary to explain my decision.

## SEQUENTIAL DISABILITY EVALUATION

A claimant is disabled if he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability claims are evaluated according to a five-step procedure. See Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 689 (9th Cir. 2009). The claimant bears the ultimate burden of proving disability. Id.

In the first step, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b). In step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." Yuckert, 482 U.S. at 140-41; see 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled.

In step three, the Commissioner determines whether the impairment(s) meets or equals "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." Yuckert, 482 U.S. at 141; see 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. Yuckert, 482 U.S. at 141.

In step four, the Commissioner determines whether the claimant, despite any impairment(s), has the residual functional capacity ("RFC") to perform "past relevant work." 20

C.F.R. §§ 404.1520(e), 416.920(e).  If so, the claimant is not disabled.  If the claimant cannot perform past relevant work, the burden shifts to the Commissioner.

In step five, the Commissioner must establish that the claimant can perform other work. Yuckert, 482 U.S. at 141-42; see 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f).  If the Commissioner meets his burden and proves that the claimant is able to perform other work which exists in the national economy, the claimant is not disabled.  20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S DECISION

At step one of the sequential proceedings, the ALJ found Plaintiff had not engaged in substantial gainful activity since her alleged onset date of July 31, 2006.  R. at 13, Finding 2.  At step two, the ALJ found Plaintiff's "hypertension, carpal tunnel syndrome, diabetes mellitus, cervical/lumbar disc disease, and degenerative joint disease right knee" to be "severe" impairments.  R. at 13, Finding 3.  At step three, the ALJ found Plaintiff's impairments did not meet or equal the requirements of a listed impairment pursuant to 20 C.F.R. Part 404, Subpart P, Appendix 1, specifically finding Plaintiff did not meet "Listings 1.02 Major dysfunction of a joint, 1.04 Disorders of the spine, 1.08 Soft tissue injury, 4.03 Hypertensive Cardiovascular Disease, 9.08 Diabetes Mellitus and SSR 02-1p Obesity."  R. at 13, Finding 4.  At step four, the ALJ found Plaintiff was able to perform past relevant work as vocational consultant and job coach.  R. at 19, Finding 6.  The ALJ also noted the vocational expert ("VE") gave the following examples of work Plaintiff could perform which existed "in significant numbers throughout the national and statewide economies": storage factory rental clerk, receptionist clerk, and information aide.  R. at 26.

/ / /

## STANDARD OF REVIEW

A court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record.  Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  Substantial evidence is "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation omitted).  The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed.  See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986). "Where the evidence as a whole can support either a grant or a denial, [a court] may not substitute [its] judgment for the ALJ's."  Massachi v. Astrue, 486 F.3d 1149, 1152 (9th Cir. 2007) (citation omitted).

The initial burden of proof rests upon the claimant to establish disability.  Howard, 782 F.2d at 1486.  To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months. . . ."  42 U.S.C. § 423(d)(1)(A).

## DISCUSSION

Plaintiff makes the following assignments of error by the ALJ: (1) the ALJ erred by improperly dismissing her testimony and the opinions of Plaintiff's medical providers; (2) the ALJ erred at step two by finding Plaintiff's right shoulder and obesity impairments were not severe; (3) the ALJ erred at step three by finding Plaintiff did not meet or equal Listing 1.04(A); and (4) the ALJ erred at step four by finding Plaintiff was able to perform past relevant work as a vocational consultant and job coach.

**I. Whether The ALJ Improperly Dismissed Plaintiff's Pain Testimony**

Plaintiff challenges the ALJ's rejection of her testimony.  The main thrust of Plaintiff's argument is that the severity of her pain and impairments clearly demonstrate she: (1) is limited by moderate pain; (2) could only perform work and some recreation with frequent episodes of pain; (3) is limited to one-half hour standing and one mile of walking; (4) has difficulty walking and sitting; (5) goes numb "from the waist down" unless she is allowed to lay down every hour or two hours; (6) can stand for thirty minutes, sit for forty-five minutes, and walk four to five blocks slowly; (7) has great difficulty lifting, bending, sitting, or standing due to chronic pain and fatigue; and (8) has pain and numbness in her hands and arms that make keyboarding especially difficult.   Pl.'s Opening Br., p. 15.  She also contends she "suffer[s] from mood swings and depression due to pain and limitations."  Id., p. 16.

When deciding whether to accept the subjective symptom testimony of a claimant, the ALJ must perform a two-stage analysis.  First, the ALJ "must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."  Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007).  When doing so, the claimant "need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom."  Smolen v. Chater, 80 F.3d 1273, 1282 (9th Cir.1996).  At the second stage of the analysis, the ALJ must assess the credibility of the claimant's testimony regarding the severity of the symptoms.  If there is no affirmative evidence of malingering, the ALJ may reject the claimant's testimony "only by offering specific, clear and convincing reasons for doing so."  Id.

The ALJ may consider many factors in weighing a claimant's credibility, including "(1) ordinary techniques of credibility evaluation, such as the claimant's

reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." If the ALJ's finding is supported by substantial evidence, the court "may not engage in second-guessing."

Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008) (some internal citations omitted).

The ALJ gave clear and convincing reasons supported by substantial evidence for discounting Plaintiff's testimony. The ALJ concluded, among other things, that "[f]rom [the] Functional Evaluation performed in November 2007[,] although claimant was found to give less than optimal effort[,] she was felt capable of light work activity." R. at 19. A review of the record shows that on November 13, 2007, occupational therapist Christopher A. Park ("OT Park") performed a Functional Capacity Evaluation ("Functional Evaluation") of Plaintiff. R. at 321-28. OT Park repeatedly noted that Plaintiff "passed 6/10 (60%) tests of Maximum Voluntary Effort, well below the recommended 75% cutpoint" which was "indicative of less than full effort in testing of this type." R. at 326-27. He also noted Plaintiff "appeared to be self limiting [sic] . . . and ha[d] a tendency to under estimate [sic] her physical and functional capacities." Id. Notably, OT Park "projected that [Plaintiff] could likely function at the SEDENTARY to LIGHT physical demand levels had she put forth her best effort . . . ." R. at 326.

The ALJ may consider a claimant's failure to give "maximum or consistent" effort during physical capacity evaluations and a claimant's "efforts to impede accurate testing" of limitations when determining a claimant's credibility. Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002) (ALJ's adverse credibility finding was proper where claimant "failed to give maximum or consistent effort during two physical capacity evaluations" and where claimant demonstrated "efforts to impede accurate testing of her limitations"). The ALJ's reliance on OT Park's

observations that Plaintiff appeared to be self-limiting during her physical examination in this instance was proper. <u>Id.</u> (concluding the ALJ "gave specific, clear and convincing reasons" for discounting claimant's testimony where therapist observed claimant "self-limited herself during testing").

The ALJ also concluded Plaintiff's pain did not "drastically impact[] upon her activities of daily living," specifically noting that Plaintiff "is independent in caring for her personal hygiene and dressing as well as performing her housework." R. at 19. The ALJ may properly consider inconsistencies between a claimant's daily activities and her alleged impairments as a basis for discrediting a claimant's subjective testimony. <u>Orteza v. Shalala</u>, 50 F.3d 748, 750 (9th Cir. 1995). Here, Plaintiff stated she cares for her children by "cook[ing], shop[ping] for food, and provid[ing them with] transportation." R. at 116. She also stated she and her daughters take care of the pets at home by "feed[ing them], walk[ing them], [and]clean[ing] up" after them. Id. Moreover, as the ALJ properly noted, Plaintiff stated she has "no problem" with her personal care, specifically offering that her condition does not affect her ability to dress, bathe, care for her hair, shave, feed herself, or use the toilet. Id. The ALJ did not err by relying on the inconsistencies between Plaintiff's daily activities and her alleged symptoms in this instance.

The ALJ also articulated Plaintiff did not "maintain[] constant consistent care for pain," "fail[ed] to consume medications as prescribed," and did not "follow diet and check pressures daily." R. at 15, 19. In determining credibility, an ALJ may consider a claimant's failure to follow prescribed treatment. <u>E.g.</u>, <u>Smolen</u>, 80 F.3d at 1283; <u>Fair v. Bowen</u>, 885 F.2d 597, 603 (9th Cir. 1989); 20 C.F.R. § 404.1530. If the claimant provides "evidence of a good reason for not taking medication for her symptoms, her symptom testimony cannot be rejected for not doing so." <u>E.g.</u>, <u>Smolen</u>, 80 F.3d at 1284. Plaintiff asserts her reason for her non-compliance stemmed

from her lack of insurance and resulted from her change of medical providers.  Plaintiff's assertions, however, are unavailing.

In April 2005 Wolanek, ARNP ("ARNP Wolanek") assessed Plaintiff with diabetes mellitus and encouraged Plaintiff "to take her medications regularly and not miss doses," "increase her exercise," "make diet changes," and attend diabetic classes at the hospital.  R. at 195-96.  Although Plaintiff "verbalize[d] understanding and agreement with [ARNP Wolanek's] plan," ARNP Wolanek noted in July 2005 that Plaintiff was "not doing daily foot checks," was not "exercising on a daily basis," and was not "following a certain diet."  R. at 219.  ARNP Wolanek even noted that Plaintiff was "not willing to pursue" changes in her diet and exercise.  Id.  The ALJ's reliance on Plaintiff's failure to follow her treatment plan as recommended by ARNP Wolanek was not improper in this instance.  See Burris-Hall v. Astrue, No. CV. 09-6354-MA, 2011 WL 653896, at 7 (D. Or. 2011) ("ALJ could properly discredit plaintiff for failing to regularly attend counseling sessions as recommended by her treating physician") (citing Tommasetti, 533 F.3d at 1039).

Plaintiff also challenges the ALJ's finding that she failed to comply with her treatment plan, pointing to her own statement to Tannika Christensen, M.D. ("Dr. Christensen") in January 2008 that she was watching her diet and exercising daily.  R. at 358.  Plaintiff's assertion simply does not address her previous failure to watch her diet and check her pressures daily, which the ALJ specifically cited.  In addition, Plaintiff does not cite any evidence demonstrating her intermittent lack of insurance coverage or change in medical providers prevented her from watching her diet or checking her pressures as recommended by ARNP Wolanek.  Indeed, Plaintiff even admitted during her testimony on August 5, 2009, that she "tr[ies] to take [her] pain medication less often than . . . prescribe[d]."  R. at 38.  Failure to seek relief from pain is

probative of credibility because "a person's normal reaction is to seek relief from pain, and because modern medicine is often successful in providing some relief." Orn v. Astrue, 495 F.3d 625, 638 (9th Cir. 2007).  Where the ALJ's conclusions are supported by substantial evidence in the record, as here, the court must uphold the Commissioner's decision.  Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001).

In sum, the ALJ gave specific, clear and convincing reasons supported by substantial evidence for discrediting Plaintiff's testimony.  It is worth noting that the ALJ also provided other reasons for discrediting Plaintiff's subjective testimony.  Even assuming those other reasons were improper, I conclude the ALJ's credibility determination would still stand and accordingly, I do not address the validity of the other reasons proffered by the ALJ.  See Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1162 (9th Cir. 2008) (not all of an ALJ's reasons for discrediting a claimant must be upheld as long as substantial evidence supports the determination); Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1197 (9th Cir. 2004) (a court may properly affirm the ALJ's overall credibility decision even when it does not uphold all of the ALJ's reasons for doing so).  The ALJ's adverse credibility finding is affirmed.

## II. Whether the ALJ Erred at Step Two of the Sequential Evaluation

### A. Whether Plaintiff's Right Shoulder Impairment is Severe

#### 1. Rejection of Medical Opinions

Plaintiff asserts the ALJ erred by concluding her right shoulder impairment was not a severe impairment because he improperly rejected the opinions of her medical providers. Specifically, Plaintiff argues the ALJ erred by dismissing the opinions of Robert Choi, M.D. ("Dr. Choi"), Beth Moore, M.D. ("Dr. Moore"), James Manwill, M.D. ("Dr. Manwill"), Robb Larsen, M.D. ("Dr. Larsen"), and ARNP Wolanek.

The weight given to the opinion of a physician depends on whether the physician is a treating physician, an examining physician, or a nonexamining physician.  See, e.g., Orn, 495 F.3d at 632.  More weight is given to the opinion of a treating physician because the person has a greater opportunity to know and observe the patient as an individual.  Id.  If a treating or examining physician's opinion is not contradicted by another physician, the ALJ may only reject it for clear and convincing reasons.  E.g, Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995).  Even if it is contradicted by another physician, the ALJ may not reject the opinion without providing specific and legitimate reasons supported by substantial evidence in the record.  Orn, 495 F.3d at 632; Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006).  The opinion of a nonexamining physician, by itself, is insufficient to constitute substantial evidence to reject the opinion of a treating or examining physician.  Widmark, 454 F.3d at 1066 n.2.  Opinions of a nonexamining, testifying medical advisor may serve as substantial evidence when they are supported by and are consistent with other evidence in the record.  Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 600 (9th Cir. 1999).

With respect to Drs. Moore and Manwill, the ALJ does not specifically mention them.  A review of the record shows that Dr. Moore treated Plaintiff's right shoulder pain on November 29, 2008, documenting Plaintiff exhibited "some tenderness across the right biceps tendon across the top" of her right shoulder.  R. at 337.  She further documented Plaintiff's "[r]ange of motion [was] limited to 30° abduction, 45° forward flexion" and diagnosed Plaintiff with "[r]ight shoulder strain: [m]ost likely muscular."  Id.  With respect to Dr. Manwill, the record shows he reviewed an x-ray of Plaintiff's right shoulder.  R. at 336.  He noted there were "calcifications . . . present" and ultimately diagnosed Plaintiff with "[r]ight shoulder calcific tendinitis."  Id.

The Commissioner does not specifically address the ALJ's failure to discuss the opinions of Drs. Moore and Manwill.  Rather, the Commissioner merely asserts "[t]he ALJ thoroughly discussed the relevant medical evidence and reasonably concluded that Plaintiff's shoulder impairment did not meet the severity requirement for at least twelve continuous months (Tr. 14, 18, 19) . . . [and was only] intermittent in nature."  Def.'s Br., p. 13.  The Ninth Circuit has repeatedly emphasized the "bedrock principle of administrative law" that a "reviewing court can evaluate an agency's decision only on the grounds articulated by the agency."  Ceguerra v. Sec'y of Health and Human Servs., 933 F.2d 735, 738 (9th Cir. 1991).  The Commissioner's argument was not articulated by the ALJ and thus constitutes an improper, post-hoc rationalization which I may not consider.  E.g., Bray v. Comm'r Soc. Sec. Admin., 554 F.3d 1219, 1225-26 (9th Cir. 2009) (citation omitted).  The ALJ's error was not harmless because nothing in the record demonstrates the ALJ considered the limitations associated with Plaintiff's right shoulder when making his step four finding.  See Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007) (ALJ's failure to discuss the claimant's impairment in the severity determination is harmless where the ALJ considered any limitations posed by the impairment at step four); Graybeal v. Astrue, No. 3:10-cv-06387-PK, 2011 WL 6019434, at *6 (D. Or. 2011) ("An ALJ's erroneous finding that an impairment is non-severe constitutes harmless error . . . if the ALJ resolves step two in the claimant's favor and properly considers limitations imposed by the impairment at other steps of the sequential process.").

With respect to Dr. Larson, the ALJ cited certain portions of his medical notes, but did not explicitly accord any weight to his medical opinion.  Instead, the ALJ simply parroted the following portion of Dr. Larsen's medical notes without any analysis:

> Records from orthopedist Larsen indicate that in May 2009 claimant had a steroid injection right shoulder [sic] and she felt 50% better.  On examination she had

> evidence of scapulothoracic crepitation.  Impingement signs were positive.  She
> had not yet begun physical therapy.  She continued to have difficulty sleeping at
> night.  She denied any numbness or tingling.  Assessment remained right shoulder
> rotator cuff tendonitis.

R. at 14.

A review of the record shows Dr. Larsen treated Plaintiff's right shoulder pain.  R. at 488-89.  On February 3, 2009, Dr. Larsen assessed Plaintiff with "[r]ight shoulder impingement and calcific tendinitis" and administered a steroid injection to her right shoulder.  R. at 477, 488-89.  On May 11, 2009, Dr. Larsen noted Plaintiff has "difficulty with overhead activity" and upon examination, documented that there was "evidence of scapulothoracic crepitation," "pain with resisted isolation of the supraspinatus," and positive "[i]mpingement signs."  R. at 477.  That same day, May 11, 2009, Dr. Larsen elected to administer a second steroid injection to Plaintiff's right shoulder.  Id.  He also referred Plaintiff to physical therapy, explicitly noting that the "prescribed rehabilitation [was] medically necessary."  Id.

Although "[a]n ALJ . . . errs if he implicitly rejects a doctor's testimony," Coffman v. Astrue, Civil No. 07-1082-CL, 2008 WL 5429653, at *3 (D. Or. 2008), it is unclear whether the ALJ in this instance implicitly rejected Dr. Larsen's opinion or whether he cited his opinion in support of his conclusion that Plaintiff exhibited "full range of motion with no evidence of synovitis in [Plaintiff's] . . . shoulders" and that Plaintiff "has full functioning in both her upper extremities . . . ."  R. at 14-15.  For the additional reasons discussed below, this case must be remanded for additional proceedings.  Accordingly, whether the ALJ improperly rejected Dr. Larsen's medical opinion is inconsequential to whether or not this case must be remanded for further review.  On remand, however, the ALJ, is ordered to clearly assign the weight given to the opinions of Plaintiff's medical providers, including Dr. Larsen, and provide proper reasons for the weight accorded to their opinions.

Finally, I turn to the opinions of Dr. Choi and ARNP Wolanek.  A careful reading of the record demonstrates Dr. Choi examined symptoms related to Plaintiff's carpal tunnel syndrome, not her right shoulder.  R. at 339, 342-43.  Nothing in the record indicates Dr. Choi examined Plaintiff's right shoulder or expressly documented any limitations directly related to her right shoulder.  Id.  Similarly, the record shows ARNP Wolanek examined Plaintiff's complaints concerning her left arm, not her right shoulder.  R. at 197, 206-07.  Nothing in ARNP Wolanek's opinions indicate any limitations stemming from her right shoulder.  Accordingly, any error the ALJ made in failing to evaluate the opinions of Dr. Choi and ARNP Wolanek at step two of the sequential evaluation was harmless.  See Lewis, 498 F.3d at 911 (step two error harmless if ALJ considered limitations at step four).

In sum, the ALJ erred by failing to provide legally sufficient reasons supported by substantial evidence in the record when implicitly rejecting the opinions of Drs. Moore and Manwill.  The ALJ's failure to discuss the opinions of Dr. Choi and ARNP Wolanek at step two, however, was harmless error.

## 2. Rejection of Lay Witness Statements

Plaintiff contends the ALJ erred when concluding she maintained "full function of both upper extremities."  R. at 15.  She asserts the ALJ failed to properly consider statements made by her friend, Kristie Eilers ("Eilers").  I agree.

Lay testimony regarding a claimant's symptoms is competent evidence that the ALJ must consider unless he "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so."  Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001); see also Merrill ex rel. Merrill v. Apfel, 224 F.3d 1083, 1085 (9th Cir. 2000) ("[A]n ALJ . . . must give full consideration to the testimony of friends and family members.").  The ALJ's reasons for

rejecting lay-witness testimony must also be "specific." Stout v. Comm'r Soc. Sec. Admin., 454 F.3d 1050, 1054 (9th Cir. 2006). When "the ALJ's error lies in a failure to properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." Id. at 1056.

Here, in a letter dated July 31, 2009, Eilers wrote that she observed Plaintiff struggling with daily tasks, including cooking meals, cleaning up, lifting pans, taking out the garbage, putting away groceries, and doing the dishes. R. at 184. In his opinion, the ALJ stated, "I give no credit to the statements of Kristie Eilers (who has known claimant for less than a year), Wendy Davis (who has known claimant for ten years) but focuses on depression, cousin Spencer Wenner again focusing on severe pain, [sic]" R. at 18. Even if I were to construe the ALJ's reason for rejecting Eilers's lay witness statements on the basis that Eilers had known Plaintiff for only a short period of time, such a reason by itself would not amount to a specific germane reason supporting his decision to accord Eilers's lay witness statements "no credit." In light of Eilers's statements in her July 31, 2009, letter, I cannot "confidently conclude that no reasonable ALJ" could have reached a different disability determination when fully crediting her statements, and therefore cannot conclude the ALJ's error was harmless. See Stout, 454 F.3d at 1056. The ALJ's reason for rejecting Eilers's lay witness statements was legally erroneous and cannot be affirmed. Id.

**B. Whether Plaintiff's Obesity is a Severe Impairment**

Plaintiff contends the ALJ erred by finding her obesity not severe at step two of the sequential proceedings. She argues that her obesity combined with her knee arthritis, spinal and

cervical complaints, hypertension, and diabetes mellitus worsen the severity of her other symptoms.  I disagree.

Social Security Regulations ("SSR") provide that the ALJ "will do an individualized assessment of the impact of obesity on an individual's functioning when deciding whether the impairment is severe."  SSR 02-1p, at *4.  An impairment is "severe" if it "significantly limits [a claimant's] ability to do basic work activities."  20 C.F.R. § 416.920(c); see also 20 C.F.R. § 416.921.  Such an impairment must last, or be expected to last, twelve months.  20 C.F.R. § 416.909.  "[A]n impairment . . . is 'not severe' . . . if it is a slight abnormality (or a combination of slight abnormalities) that has no more than a minimal effect on the individual's ability to do basic work activities . . . ."  Id.

Plaintiff contends the ALJ recognized Plaintiff's obesity, but erroneously concluded Plaintiff "has no extreme restriction in her capacity to walk which interferes seriously in her capacity to independently initiate, sustain, and complete activities."  R. at 15; Pl.'s Opening Br., p. 9.  Plaintiff's argument is unavailing.  "The claimant has the burden of providing evidence as to how [her] obesity limits [her] functioning."  McCullough v. Astrue, No. CV–10–6117–ST, 2011 WL 5873068, at *11 (D. Or. 2011) (citing Burch v. Barnhart, 400 F.3d 676, 683 (9th Cir. 2005)).  Here, Plaintiff points to no evidence demonstrating how her obesity limits her functioning.  She fails to cite any evidence showing that her difficulties or impairments stem from her obesity.  In addition, Plaintiff fails to identify any evidence demonstrating her obesity exacerbated any of her other symptoms.  Lowe v. Astrue, Civil No. 10-0904-MO, 2011 WL 4345168, at *4 (D. Or. 2011) ("To succeed in an obesity claim, a claimant must show that h[er] obesity exacerbates h[er] other symptoms.") (Citation omitted); Valentin v. Astrue, Civil No. 09–1424–AC, 2011 WL 2444807, at *8 (D. Or. 2011) (same).  Plaintiff fails to meet her burden and

accordingly, the ALJ's step two findings regarding Plaintiff's obesity is affirmed.  See Valentin,

Civil No. 09–1424–AC, 2011 WL 2444807, at *8 (affirming the ALJ's step two finding where

claimant failed to show the ALJ omitted limitations related to her obesity).

**III. Whether the ALJ Erred at Step Three of the Sequential Evaluation**

At step three of the sequential evaluation, the ALJ found Plaintiff's impairments did not

meet or equal the criteria of Listing 1.04.  R. at 13.  Plaintiff contends she meets Listing 1.04(A)

because she suffers from "neuro-anatomic distribution of pain, limitation of motion of the spine,

motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by

sensory or reflex loss."  Pl.'s Opening Br., p. 12.  She asserts the ALJ erred by improperly

rejecting the opinions of her treating physicians and ARNP Wolanek.  Plaintiff contends her

spinal disorder combined with her shoulder and knee impairments, her carpal tunnel in her

hands, and her diabetes when properly considered in combination establishes medical

equivalence to Listing 1.04(A).

The SSR's "Listing of Impairments" generally describes impairments that are

so severe as to be considered presumptively disabling.  20 C.F.R. §§ 404.1520(d),

416.920(d).  "The mere diagnosis of an impairment listed in 20 C.F.R. Appendix 1,

Subpart P . . . is not sufficient to sustain a finding of disability."  Young v. Sullivan,

911 F.2d 180, 183 (9th Cir. 1990); 20 C.F.R. § 404.1525(d) (same).  "To meet the

requirements of a listing, [a claimant] must have a medically determinable

impairment . . . that satisfies all of the criteria in the listing."  E.g., 20 C.F.R. §

404.1525(d).  "If a claimant has more than one impairment, the Commissioner must

determine whether the combination of [the] impairments is medically equal to any

listed impairment." Lewis, 236 F.3d at 514 (citation and quotation marks omitted);

Tackett v. Apfel, 180 F.3d 1094, 1099 (9th Cir. 1999).

Listing 1.04 addresses spinal disorders. It states in relevant part:

Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:

A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine) . . . .

20 C.F.R. Pt. 404, Subpt. P, App. 1, 1.04(A).

The Commissioner maintains that Plaintiff does not meet the criteria of Listing 1.04(A) because the portions of the record cited by Plaintiff show no motor loss or sensory or reflex loss. In addition, the Commissioner asserts the ALJ properly considered the opinions of Plaintiff's medical providers, specifically asserting that the treatment notes of William Balsom, M.D. ("Dr. Balsom") do not mention any weakness or motor loss.

The Commissioner's argument is unavailing. The Commissioner fails to recognize that other portions of the record show Plaintiff suffers motor loss and sensory and reflex loss. For example, Dr. Choi indicated weakness and "sensory symptoms" associated with Plaintiff's hands. R. at 343. In addition, Dr. Choi noted that Plaintiff's physical examination indicated loss in motor skills, specifically documenting that Plaintiff's "motor" evaluation demonstrated "[s]evere pain on palpation of most of [Plaintiff's] joints and tendons in the wrists and hands. Mild giveaway type weakness in the distal muscles of [Plaintiff's] hands on both sides." Id. Contrary to the Commissioner's assertion, the record suggests Plaintiff satisfied the requirements of Listing 1.04(A).

In addition, the ALJ's step three finding fails because the ALJ improperly addressed other opinions by Plaintiff's medical providers, including Dr. Balsom.  Although the ALJ stated that "[t]here is no evidence of record of internist Balsom saying that claimant's condition is a 'time bomb', and without surgery to stabilize the area, certainty for her becoming paralyzed from waist down," the ALJ, failed to assign any weight to Dr. Balsom's opinion or state whether he accepted or rejected his medical opinion. R. at 18.  Similarly, although the ALJ referred to the opinion of Plaintiff's treating chiropractor, Ross M. Hart, D.C. ("Dr. Hart"), he simply stated, "On June 13, 2006 chiropractor Ross M. Hart wrote that [Plaintiff] was still disabled in her abilities to function in her normal activities of daily living." R. at 13, 227.  The record, however, is absent any indication whether the ALJ accepted or rejected Dr. Hart's opinion.[1]  More important, as Plaintiff correctly points out, the ALJ fails to specifically address the opinions of Andrea L. Halliday, M.D. ("Dr. Halliday"), Marc Garant, M.D. ("Dr. Garant"), Dr. Moore, and ARNP Wolanek.  Instead, at the conclusion of his step three findings, the ALJ simply string cites the following: "(Exhibits 2F-10;3F, pgs. 2, 3, 26, 33, 43, 44, 46, & 49; 11F, pgs. 2, 3,5,7-10,13,18, & 21; 12F, pgs. 3 & 9; 13F- 3;14F, pgs. 2, 10, & 12; 15F, pgs. 10, & 17; 16F- 8; 17F-2; 18F, pgs. 1-4; and 19F, pgs. 2, 3, 5- 7,9, & II)." R. at 17.

The ALJ's string cite is legally inadequate and is, at best, unhelpful.  See Smith v. Astrue, 252 Fed. Appx. 820, 823 (9th Cir. 2007) ("If the ALJ fails to provide an adequate basis for review to determine whether the decision is based on substantial evidence, the case must be

---

[1] The ALJ may reject the opinions of "other sources," including of nurse practitioners and chiropractors, only if he "furnish[es] reasons germane to that particular witness." E.g., Bowser v. Comm'r of Soc. Sec., No. 03-16066, 121 Fed. Appx. 231, 239 (9th Cir. 2005) (citing Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993)); see also SSR 06–03p, at *6 (the ALJ "generally should explain the weight given to opinions from . . . 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case").

remanded.")  (Citing <u>Pinto v. Massanari</u>, 249 F.3d 840, 847 (9th Cir. 2001)).  Based on the ALJ's citation to the record, I am unable to determine which specific cite corresponds to which portion of the ALJ's opinion.  The ALJ's failure to mention Drs. Halliday, Choi, Garant, Moore and ARNP Wolanek in his step three discussion adds an additional layer of difficulty in determining which portions of his findings correspond to which portions of the record.  The ALJ's failure to properly address the opinions of Plaintiff's medical providers is troubling because they appear to contain probative evidence favorable to Plaintiff's claim that she meets or equals the criteria of Listing 1.04(A).  The Commissioner fails to remedy the ALJ's errors and simply states in conclusory fashion, "The ALJ provided a thorough and complete discussion of the relevant medical evidence (Tr. 12-19)."  Def.'s Br., p. 15.

Simply put, I cannot conclude that the ALJ's step three finding is supported by substantial evidence.  <u>See</u> <u>Smith</u>, 252 Fed. Appx. at 823 ("We will affirm a final decision of the Commissioner unless it is not supported by substantial evidence or is based on legal error."). Because it is unclear from the record whether Plaintiff's conditions meet the criteria of Listing 1.04 and because further proceedings are necessary for the ALJ to properly evaluate the medical evidence, remand is the appropriate remedy.  <u>See Marcia v. Sullivan</u>, 900 F.2d 172, 176 (9th Cir. 1990) ("Where the Secretary is in a better position than this court to evaluate the evidence, remand is appropriate.") (Citation omitted).

## IV. Whether the ALJ's Step Four Findings was Improper

Plaintiff contends the ALJ's RFC did not properly reflect all of her limitations.  She contends the ALJ improperly dismissed her testimony and therefore, his step four finding is erroneous.  As discussed above, the ALJ did not err when discrediting Plaintiff's testimony.  As such, the ALJ's RFC assessment is proper insofar as it excludes Plaintiff's subject statements.

Plaintiff also asserts the record does not support a finding she is capable of sedentary or light work and as such, his finding that she is capable of performing past relevant work is improper.  Plaintiff argues that because sedentary work requires sitting for prolonged periods of time and because light work requires standing and walking for prolonged periods of time, the ALJ's step four findings are inconsistent with her functional limitations.  I agree.

Here, the ALJ concluded Plaintiff had the RFC to perform "light work," but was to "avoid constant sitting, constant standing, constant walking, climbing, uneven terrain, frequent bending/kneeling and material handling greater than 15-20 pounds on an occasional basis."  R. at 17.  He also concluded Plaintiff had the RFC to "walk/stand for 4/8 hours in increments of 20-30 minutes each and sit up to 6/8 hours in a day in increments of 25-45 minutes each . . . ."  Id.

20 C.F.R. § 404.1567 defines "sedentary work" as:

> [L]ifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools . . . . [It] involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a); 20 C.F.R. § 416.967(a) (same).

On the other hand, "light work" is defined as:

> [L]ifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b); 20 C.F.R. § 416.967(b) (same).

21 - OPINION & ORDER

As discussed above, the ALJ failed to properly address the opinions of a number of Plaintiff's medical providers, including OT Park. OT Park's opinion appears to include additional limitations the ALJ failed to otherwise consider when making his RFC determination. For example, OT Park opined in his Functional Evaluation that Plaintiff's projected physical capacity was limited to walking less than one hour at a time and no more than one to two hours total. R. at 329. The ALJ's RFC determination, however, stated Plaintiff had the RFC to "walk/stand" for a total of "4/8 hours." R. at 17, 329. In addition, as discussed above, the ALJ incorrectly rejected Eilers's lay witness testimony. Consequentially, he failed to consider what impact, if any, Eilers's statements had on Plaintiff's RFC.

Suffice it to say, the ALJ's RFC assessment failed to include all of Plaintiff's limitations and was therefore erroneous. Since the hypothetical posed to the VE was based on an erroneous RFC, the ALJ's step four determination is not supported by substantial evidence. See March v. Comm'r of Soc. Sec. Admin., No. 10–35980, 2011 WL 6322394, at *2 (9th Cir. 2011) ("Because the RFC was defective, so were the hypothetical questions that the ALJ posed to a [VE] . . . . The VE's testimony cannot constitute substantial evidence in such circumstances . . . .") (Internal quotation marks omitted).

## V. Whether Remand is Appropriate

This court has the discretion to remand for further proceedings or for immediate payment of benefits. Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir. 2000). "[A] remand for further proceedings is unnecessary if the record is fully developed and it is clear from the record that the ALJ would be required to award benefits." Holohan v. Massanari, 246 F.3d 1195, 1210 (9th Cir. 2001) (Citations omitted). Generally, when reversing the Commissioner, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or

explanation." Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004) (quotation marks and citation omitted). The issue turns on the utility of further proceedings. E.g., Alcock v. Comm'r of Soc. Sec. Admin., No. 1:10–cv–6206–MA, 2011 WL 5825922, at *8 (D. Or. 2011).

The Ninth Circuit has established a three-part test "for determining when evidence should be credited and an immediate award of benefits directed." Harman, 211 F.3d at 1178. The court should grant an immediate award of benefits when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Id. (citing Smolen, 80 F.3d at 1292).

Noted above, the ALJ failed to articulate legally sufficient reasons for rejecting the opinions of a number of Plaintiff's medical providers and lay witness statements. As such, the ALJ failed to properly consider the limitations contained therein when proceeding through the steps of the sequential evaluation. Further proceedings would be useful because it is unclear from the record that the ALJ would be required to find Plaintiff disabled if he had properly considered the evidence. March, No. 10–35980, 2011 WL 6322394, at *3 ("Because there [were] outstanding issues . . . and because it [was] not clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence, a finding of disability and an award of benefits [was] premature.") (Quotation marks and citation omitted). Exercising my discretion, I find it is appropriate to remand this case for further proceedings so that the ALJ may properly consider and evaluate the evidence.

/ / /

## CONCLUSION

Based on the foregoing, the Commissioner's decision is REVERSED and REMANDED

for further proceedings.

IT IS SO ORDERED.

Dated this 28th day of February, 2012.


/s/ Marco A. Hernandez
MARCO A. HERNANDEZ
United States District Judge